Everyone will hear first in 21-765, Berg versus the Kingdom of the Netherlands, Mr. Woofter. Good morning, your honors, and may it please the court, I'm Daniel Woofter, arguing on behalf of Plaintiff Appellate Berg in this matter. This is a rather complicated case with a lot of issues, so I'll start by laying out what I think is the minimum that this court would have to do for my client to obtain a remand in this case. First and easiest, to remand this case as to the public museums and the artwork in their possession and control, I need only to convince this court of two things on which the district court erred. One, my client had standing in fact since the outset as either the heir or personal representative of Katz, and it is more than plausible that a judgment against the public museums could fully redress at least some of my client's claims. And two, to the extent the Constitution might require something more than what Congress said in the FSIA establishes personal jurisdiction, the public museums' specific contacts in the United States involving the exact artworks at issue are more than sufficient to establish specific personal jurisdiction over the public museums. Second, to remand this case as to the ministry and RCE, thus keeping all of the subject artwork in the case, I need to further convince this court that one, the ministry and RCE are agencies and instrumentalities because their core function is commercial, not governmental, or at the very least that defendants have not met their burden of persuasion to categorically disprove such at this pre-jurisdictional discovery stage. And two, that again, to the extent something more is required than what is necessary to the FSIA, the ministry and RCE are also subject to specific personal jurisdiction here based on the allegations and evidence of their commercial activity in the United States involving the specific artworks at issue. So, counsel, could I interrupt you right there? I'm just trying to make sure before we get into the arguments, I understand what's on the table and what's not. And I think with respect to the museums, you've identified the issues as I saw them with one exception, which is the venue issue. And I know you weren't suggesting that wasn't present, but I think that issue is on the table as to the museums as well. With respect to the ministry and RCE, I certainly understand that on the table we have the district court's determination that those defendants were political subdivisions as opposed to agents and instrumentalities. Do we have, you mentioned just now the personal jurisdiction issue as it relates to those defendants, if I understood you. And I didn't, maybe I'm not completely clear. Is that issue before us since the district court did not rule on that? No, your honor. I agree with you there. And actually, I agree that the proper course, if you do agree with us that the ministry and RCE are agencies and instrumentalities, the better course would be to remand for the district court to then run a personal specific jurisdiction analysis as to the ministry and RCE as well. Okay. And doesn't the standing issue apply to those defendants as well? Yes. And I didn't mean to make it sound like all of the first issues I named did not apply. I just meant to say that those further arguments are the ones I had to convince you of as to the ministry and RCE. I appreciate it. I wasn't suggesting you were trying to do anything other than just, I just wanted to make sure I was clear on what we have before. So you can proceed. Thank you. Before you proceed, can you address the issue that Judge Cordova mentions with respect to the public museums? If I agreed that you had standing and I agreed that personal jurisdiction exists, why wouldn't then you still mean your case is dismissed? Your Honor, I think that the primary consideration there is that the district court would have been required under 28 USC 1631 to consider whether or not to transfer the case rather than dismiss it as it did. You didn't appeal that issue, right? That issue is not before us. So the district court's decision to dismiss is an unappealed decision of the district court. So we don't review that. And so that claim is dismissed. And so I'm having a little hard time understanding why I can even consider the public museum issues at all. Because it appears to me that you haven't appealed the venue dismissal. And I understand your position that maybe it should have been transferred instead of dismissed, but you didn't appeal that. Your Honor, I actually disagree with the defendants on this point. We have not waived venue. As we said in the opening brief, and I quote, because of the district court's finding of improper venue was based solely on its personal jurisdiction holding, its dismissal based on venue does not pass muster. But the more important point, I think, is that the district court did not actually decide whether if its venue holding is correct, transfer instead of dismissal was appropriate. It had already held that Plaintiff failed even to plead standing and that curing that defect would be futile. So an error subject to reversal of this court agrees that there is jurisdiction over the museum defendants at the very least. So it would be for the district court and its discretion on remand to then decide, okay, well, there is standing, there is specific personal jurisdiction, and the FSIA has an exception that applies to the public museums. Now it is appropriate for me as the district court to decide in my discretion whether or not this case should be transferred because I believe venue is improper. And so that goes to the final point, which is that the rest of the issues, including whether to transfer the case, which the district court never had occasion to consider in the first instance, since it believed we did not have standing, would be to remand the case for resolution of any issue not reached, including whether the case should be transferred rather than dismissed. And that... I'm sorry. I want to make sure I understand your argument. It seems like you're making two different points. One, your position is the district court did not dismiss your case for venue. My point is that even if the court dismissed it for venue... All right, so let me ask that question. Did the district court dismiss with respect to the public museums under the venue statute? I believe the district court said that venue was improper and also a reason to dismiss. And yes, that is something that we challenged on appeal, saying that that was... That it's venue reasoning did not pass muster. And I would just, as one last point, point the district court to a recent third circuit decision, Danziger v. and Delano v. Morgan Verkamp, that's it, 948 F3rd 128, where it says that the district court is required under the statute, even sui sponte, to consider whether to transfer a case rather than dismiss it under venue, because that's what the statute says in the text. The district court shall consider that. But an appellant shall challenge any district court order that he wants reversed on appeal, right? I mean, the challenge that I'm having here, and you quoted a piece of a sentence in what I believe is the personal jurisdiction section, but I'm having a little hard time seeing where in the brief you challenged the venue ruling. So can you tell me what the best site is to suggest that I can read your brief to see that you challenged that ruling on appeal? Oh, your honor, that ruling was challenged in the body of the text at the end of our opening brief, where we said, because of the district court's finding of improper venue was based solely on its personal jurisdiction holding, its dismissal based on venue does not pass muster. And that's the best I can give you for our opening brief on how we challenged the venue holding of the district court. That's one sentence on page 54 of your brief. Correct, your honor. In addition to the arguments we made in the reply, in addition to the arguments we made in the briefing on the defendant's motion to summarily dismiss the appeal. Can I ask you a question about the FSIA issue with regard to the cultural heritage agency? With regard to that, how is the cultural heritage agency any different in this case from the National Museum of World Culture in the case decided in the district court of the District of Columbia, the Taylor case, that was involved in Sweden. Aren't they just exactly the same and shouldn't the court reach the same ruling with regard to the FSIA as regard to cultural heritage agency in this case? I don't think so, your honor, and to the extent this court believes they're the same exact posture with the same exact facts, the district court in D.C. just got it wrong. What this court said and why Oktek quoting Tronsiero from the D.C. circuit was that the court asks whether the core functions of the foreign entity are predominantly governmental or commercial. Tronsiero, in turn, says the question is, quote, whether the obvious functions rather than the uncertain powers. The district court and the defendants erred in looking at the purposes of the ministry's commercial activities, not their function. Defendants again lean in, themselves arguing that, quote, although the ministry invests in research, the media, and cultural functions, that investment did not render the ministry's functions commercial as there is no evidence that the commercial transactions occur for the purpose of individual profit, but rather for a civic and political purpose. But what the Supreme Court set out as the test for figuring out whether something is commercial or governmental under the FSIA says that when, for example, the military purchases boots or even ammunition for soldiers, that still counts as commercial activity for purposes of the act, even though it's done for the purpose of the national defense. Counsel, go ahead, judge. I'm sorry. My question dealt with the facts of the Taylor case, and the Taylor case dealt with a public museum in Sweden, which kept some of the remains of a Native American and wouldn't give them back. And in that case, the court held that it was immune under the FSIA as a political subdivision. I mean, doesn't that just squarely fit our facts? I mean, do you know the facts of that case? I mean, why is that case different? One, that case is different, Your Honor, because, okay, so it's the public museum there, but the ministry and RCE here, correct? Because the public museums here, no one disputes our agencies and instrumentalities. Oh, but, you know, I mean, look at GARB, Poland's Ministry of Treasury, same deal. It just seems, well, you stipulate that the ministry and the RCE are to be treated the same for FSIA purposes. Doesn't that stipulation basically do in your entire argument on FSIA? I don't agree, Your Honor, because the Ministry of the Treasury and GARB, the Ministry of when it comes to foreign affairs, the national defense, the Air Force, those are easy cases. As the court in DeChapelle's- GARB involved expropriated land, right, from Jewish persons? Same issue, right? Yes, Your Honor, but the question is different. If the question is whether the ministry is a political subdivision or an agency or instrumentality, that question is answered by whether or not the core functions of the ministry are commercial rather than governmental. It wasn't dismissed in the Taylor case on the basis that it said the appropriation exception didn't apply because it wasn't an agency or instrumentality, but that's the exact point that we're arguing here. It's not the acts of whether or not this was expropriated or not, the separate question as to whether the ministry and RCE should be treated as an agency or instrumentality is answered by whether its core functions are principally commercial, and those commercial functions of the ministry and RCE don't have to have anything to do with the ARDID issue in this case. That is not how the court determines whether or not the ministry and RCE are commercial rather than governmental. So Mr. Wooster, I wanted to ask one follow-up on your reference to the Supreme Court, and I think that's the Weltover case, is that what you're talking about? Correct, Your Honor. And I don't know really what to make of this, but I believe that was talking about the term commercial in the commercial activity exception as opposed to the core function analysis. Now maybe those are the exact same, maybe they're not, but I think at least on the surface it was referring to that exception. Has there been authority that says that same rule, that same interpretation of commercial activity applies to the WYOC core function test? Yes, Your Honor, I believe WYOC itself, but I would further note that in Weltover what the court was considering was the FSIA's definition of commercial activity. That definition applies throughout the Act, whether it has to do with the core function question presented in WYOC or whether it has to do with the commercial activity exception provided in 1605. I would like to keep some time for rebuttal, but I just wanted to note that fundamentally if this court finds that the allegations and even evidence of the specific activity that the defendants directed into the United States using the artworks at issue is insufficient to establish specific personal jurisdiction as to any of my client's claims, it will in effect be holding that Congress could not do what it was trying to do with the FSIA and the many amendments that attempt to provide a U.S. forum to resolve Nazi-era claims over artwork that's appropriated during World War II. That's because in all of these cases, all such artworks... You've got some time, counsel, for rebuttal. Okay, thank you. Mr. Hartzell? May it please the court. Sam Hartzell for the Dutch Parties. I'm here with my co-counsel, Sarah Erickson Andre, with whom I will be splitting time today. Now, the district court here dismissed plaintiff's actions on multiple independent grounds. Ms. Andre will be explaining why one of those grounds, venue, presents a clear, straightforward basis for this court to affirm. But venue is far from the only reason why the district court dismissed this case. The district court also dismissed it for lack of standing, for failure to show an exception to the FSIA, and for lack of personal jurisdiction. As the panel has correctly pointed out, plaintiff has to prevail on at least three of the issues in its opening brief in order for this case to be remanded. And not just those three issues, but also the fourth issue not listed in the issue statement, venue, which Ms. Andre will be talking about. But I'd like to begin with the FSIA, in particular, the discussion about the core function test in Welthoven. Judge Quattlebond, you're exactly right. The district court, and Judge Kessel, recently suggested that the district court in Byrd erred in its completion of the purpose and function aspects of the Y.O.C.O.R.E. function test. Hadn't there already been one court that looked at it and said, the district court in the state got it, didn't get it right? The district court there was looking at a different type of entity, which it distinguished in detail. But you're right in the sense that that court did go the other direction. But what I do want to emphasize here is the concession that we've heard about the RCE being a part of, not legally separable from the ministry, means the question before this court now is, is the Ministry of Education, Culture, and Science of the Netherlands, is that a political subdivision or an agency or instrument of- Isn't that stipulation dispositive on the FSIA issue? Yes, it is directly dispositive as to the RCE, because the concession is that it's not legally separate, and legally separate is what the core functions test is doing. But it's also dispositive, it takes, I think, two sentences of analysis to determine that a ministry, one of 12 top level divisions of a sovereign, is a political subdivision and not an agency or instrumentality. We're not aware of any case holding that any entity, whether called a ministry or otherwise, that is a top level subdivision of a government, is an agency or instrumentality. And indeed- You would agree that you bear the burden on proving the exception? I don't think that's right, Your Honor, because the plaintiff is the party invoking subject matter jurisdiction, I believe bears the burden of establishing an exception. But regardless, this is something that review- Your Honor, there's no court precedent to the contrary. I'm citing Sitter van de Blake versus Republic of Argentina that says, if a plaintiff's allegations and uncontroverted evidence established that an FSIA exception is a new replied, the party claiming immunity bears the burden of proving by preponderance the evidence that the exception does not apply. Okay, and with that in mind, just take that as what it is. If you look at page 750 of the appendix, where I scoured this record looking for what this agency does, what RCE does, and it says, on behalf of the Ministry of Education, Culture, and Science, the agency inherits the support of central government's art collection that is not housed in national museums and is made as accessible as possible. So, if that's the definition of what the Cultural Heritage Agency does, doesn't it simply fail to be a political subdivision under the core function test? No, for the threshold reason that plaintiff conceded, it's inseparable from the ministry. But more directly, under the precedent Your Honor cited Taylor, but also circuit court precedent, courts have consistently held that managing sovereign property is inherently governmental act under the core function test. Most recently, in the same case out of the 11th Circuit, the 11th Circuit said that the minister, the entity at issue there, is responsible for, quote, holding and administering Trinidad and Tobago's property. The court went on, these functions are plainly governmental in nature. And where to look in the record, Your Honor, for evidence of what the ministry's responsibilities, what its core functions are, I submit that the best place is the district court's order, page 1819 of the joint appendix. And there, the district court noted, relying on evidence that plaintiffs submitted, that the ministry sets policy and regulates education, culture, and media in the Netherlands. I'm not so concerned about the ministry as I am the Cultural Heritage Agency. Is it the same thing as the National Asset Management Agency in the Hungarian case? Or the State Diamond Fund in the Magnus case? No, because the purpose of this entity here is not to manage that property for profit. That is, in De Scheffel, the district court explicitly distinguished the RCE here. You know, again, I don't want to lose sight of the fact that plaintiff has considered it as part of the ministry. But it's not just Singh that says management of sovereign property is an inherently governmental act. The Second Circuit in Garb came to the same conclusion. It said it agreed with the district court's analysis, which it quoted as, holding and indisputably governmental. So the point, Your Honor, is that the RCE is not the focal point here. It's a mere department of the ministry. But even if one were to look past plaintiff's concession, not only below, but repeated in this opening brief, that's it, opening brief, page 22, note 23. Even if one were to look past that and look at the RCE specifically, that still falls well within the precedent holding that's a governmental function. And so, counsel, if I could follow up on something before you move on, I'm trying to zero in on how we look at this core functions issue. And, you know, there's questions about purpose. There's questions about function. There's also questions about structure. And as I think Wyoke, you know, cites Trans-Ero, which seems to indicate that structure is at least a factor that can be considered. Do you agree with that? Yes. So Wyoke does do that when talking about the Iraqi Ministry of Defense. It cites the Trans-Ero discussion saying that when something is bound up in the structure of government, it's no surprise that its core function is governmental. And also, to your question about the Weltover case, yes, the discussion of the commercial activity in that case was a different issue than the core function. And the best place to tell that is Wyoke itself. Because in Wyoke, the court said that the Ministry of Defense, the ministry at issue there, was a political subdivision. Its core function was waging war and defending the state. But then it went on to find an exception under commercial activity, which is not an issue here. There's been no suggestion that commercial activity was government. But what your colleague would say is that he probably would agree with that as far as it goes. But he still says that even in a different place in the analysis, the exception versus the core function, the term is the term. And they're using the act's definition. So whether or not you're looking at it in the context of the exception to immunity, or whether you're looking at it in the context of the core function, what's your response to his position that it's the same word in the statute with the same definition? The commercial activity is defined in the statute for the purpose of the FSIA. The core function test is a judicial doctrine. It's been adopted to decide whether an entity is legally separate. And I think Wyoke is instructive on this point because, as I understand Plaintiff's argument, it is we have identified some aspects of what the ministry or the RCE does that involve money. But that's invariably true. It's difficult to think of any entity that it wouldn't be. It's especially true for the Ministry of Defense and Wyoke. Right. So let me just stop you because I agree that whether it involves money can't be the end of the thing or any government entity does that. So that's a fair point. We can talk about that. But I think your point in terms of the analysis that I was getting to earlier is that the definition of commercial, let me say it this way. Because the core function is a judicially created doctrine, there is no commercial within that doctrine to be interpreted. The only way it could be referring to was within the statutory provision for that commercial activity exception. Is that right? Yes. And that is the only way to reconcile Wyoke with the Welthoever decision. Okay. All right. I made that up. You can go ahead. Thank you. Not at all. Before moving on from the FSIA, I did briefly want to point out that in Wyoke, that was a breach of contract action to dispose of surplus Iraqi equipment where the plaintiff was obligated to use reasonable commercial efforts to sell that equipment and then would keep 10 percent of that. But the court did not look at, is that particular arrangement, is that governmental or not? It said, what is the overall core functions of the ministry? What are they predominantly? We submit predominantly the ministry's core functions are predominantly governmental. That's just one of three reasons why the district court dismissed the claims here. Two others are standing and personal jurisdiction. I'd like to address both briefly. So, for standing, the plaintiff failed to show both injury and redressability. And he failed to show that... I think they're plainly standing with regard to the plaintiff as third-party beneficiaries of the collection point agreements in this case. They specifically plead third-party beneficiary in count five of the complaint. And whether or not they're heirs to the partnership from a tax or not is one issue. But these collection point agreements say that the country was going to hold it pursuant to the determination. I think they say, will be held by as custodians pending the determination of the lawful owners thereof. Aren't these folks third-party beneficiaries of the collection point agreement? So, we don't agree that they are. But more to the point, Mr. Berg, he hasn't established injury because he does not connect himself to these paintings. There's the general allegation of I'm an heir to my grandfather. But there is no specific allegation of whether Benjamin... District Court recognized this at page 1845. Whether Benjamin Plaintiff's grandfather died with a will, who inherited an interest in any facts to show that Plaintiff's mother inherited an interest in the partnership upon her father's death, when or where Plaintiff's mother died, whether Plaintiff's mother died with a will, and whether Plaintiff inherited any interest in the partnership upon his mother's death. And that was evidence that was missing from the complaint. It wasn't brought forward when we moved to dismiss for lack of standing. And even in the leaf to amend, there was no effort to correct that and say, no, all along, here is the evidence, here is the allegation tracing the interest in this partnership from 1940s Netherlands back to me, the Plaintiff. Instead, what Plaintiff did is said, I changed my theory of standing. He wrote, page 1881, that his standing argument is no longer based on inheritance, but on his appointment as a state representative. Now, that's... So, what's wrong with that? What's wrong with that? I mean, assume you're right on the air theory. He alleges he's the PR now. I know the PR came after the suit was filed in terms of its approval. But is that determinative on that issue when the PR was established? Why isn't he entitled to do it, albeit, you know, a little bit late, you know, in the different way? Because as the Supreme Court reminded us in Carney in 2020, the Plaintiff bears the burden of establishing standing as of the time he brought this lawsuit. And this court in the unpublished house decision applied that rule to somebody who had perished two days before the lawsuit was filed in his name. There was a later effort to substitute in the personal representative. This court said the personal representative substitution might cure a real party interest problem, but you must also have standing at the outset. So, Plaintiff's failure to establish either at the time or even now that he had standing requires dismissal for lack of case or controversy. The district court also correctly recognized that redressability is a bar here. Without the Netherlands, there's no way to give relief to Plaintiff and any relief would be an affront to the Dutch state, which claims ownership of this property. And personal jurisdiction is also an independent bar to the claims here. And that's because... In the Altman case, you know, it's been up and down to the Ninth Circuit a number of times, even the Supreme Court. Didn't the Altman, doesn't the Altman case stand in contrast to your argument, both with regard to redressability and with regard to the standing of the public museum? Yes, there is tension there. I would submit that was an early case before further development in the law. And I'd also emphasize, in Altman, there was a clear alleged connection between some of the artworks at issue and the forum. Here, there is never a place where one of the museum's artworks, the 13 artworks that are identified as being possessed by a museum, no specific connection to the forum. The closest Plaintiff gets is identifying one artwork that he says is for sale through Getty Images. But if you look at page 1,000 of the joint appendix, the evidence, the allegation is the Ministry sold that. So that's not sufficient for one of the museums. So, Your Honors, there's multiple independent grounds here for this Court to affirm. But the final one, I think, is the cleanest, which is venue, because as Ms. Andre is going to explain, Plaintiff did not appeal that. Thank you. Counsel? Good afternoon. May it please the Court. My name is Sarah Erickson Andre, and I, along with my colleague Thaddeus Stauber, represent the Dutch Museums. And I would like to speak to you about the District Court's determination that venue was not proper in South Carolina. But before addressing that, the District Court's determination, I would like to note that the pending motion for summary affirmance provides an avenue to resolve the appeal without addressing the alternative grounds for dismissal. Here, Plaintiff did not challenge the District Court's finding that Section 1391-F-3 does not provide a venue in South Carolina for the agencies or instrumentalities, because general allegations of nationwide solicitation and sales simply do not support a finding that the municipal museums are doing business in the District of South Carolina. Nor did Plaintiff challenge the District Court's finding that Section 1391-F-4, which holds that venue is proper in the District of Columbia in a suit against a sovereign or its political subdivisions, cannot apply because the Court cannot exercise jurisdiction over a sovereign or a political subdivision where is here. The claimed property is not located in the United States. The last page of Plaintiff's brief acknowledges that the District Court's lack of venue finding provides an independent basis for dismissal, noting that even if this Court accepts all of Plaintiff's other arguments, that leaves one last reason for the District Court's dismissal, improper venue. But Plaintiff waived any challenge because his opening brief fails to identify any errors in the District Court's determination. Notwithstanding the clear waiver and Plaintiff's failure even now to assert that the District Court's venue determination was an error, Plaintiff asserts instead that if he succeeds in his appeal, which would again require Plaintiff... Respond, I mean, he says, no, no, no, no, like look on page, you know, 57, you know, three lines down in the middle of the paragraph and I got this sentence that says something to the effect of, because the venue was based on personal jurisdiction, it's unwarranted. Why isn't that sufficient to challenge the District Court's independent dismissal on the part of the public museums? First I would suggest, Your Honor, that one sentence is not sufficient. Second, I would assert that the statement itself is incorrect. The District Court's made an independent determination with respect to venue and found that venue was not proper because there was no evidence or insufficient evidence, rather, that any of the entities were doing business in the District of South Carolina, which is a very separate analysis than personal jurisdiction. So on this point, counsel, help me understand what's kind of before us to decide and what's been maybe preserved or not preserved. It seems to me there is a question of whether venue is proper and we can, you know, look at what the District Court said and we can look at that sentence in the brief that Judge Richardson was just referring to and see whether that's an adequate challenge to that. But then there's a different issue, it seems to me, about if it's proper, if venue is improper, can you dismiss or must you transfer? And I guess my question is, I don't think the plaintiffs have raised that second issue. I'll ask them again about it because I know he mentioned something. I want to make sure I'm clear. But what's your position as to whether the appellate must raise both of the two issues that I've identified within venue? I think in order to have a constructive discussion about a legal issue, the plaintiff is obligated to raise it in the appeal. I would note, though, aside from the fact that it is our position that these issues are waived, plaintiff's argument regarding transfer of venue is futile. Again, the only subsection of 1391 that applies here, which is F3, with respect to agencies or instrumentalities, directs the court to analyze whether or not the entities are doing business in a particular district. There is no evidence in the record that the public museums or the ministry, to the extent that this court deems it an agency or instrumentality, are doing business in the District of Columbia. I would note that there is one reference, I believe, on page 17 of the plaintiff's amended complaint that asserts that the Central Museum once borrowed an artwork from the National Gallery in Washington, D.C. But that entity is no longer part of the case, and there is no other reference to the District of Columbia in the amended complaint. Certainly, when this court is examining whether under Manning it's appropriate to consider a waived issue, the court is directed to look at the record to determine if the record itself supports the argument here. There is nothing in the record to suggest that venue is proper in the District of Columbia. I would also note, if I may, that the plaintiff's brief and discussion of venue in its opposition to our motion for summary affirmance references the Altman and Kassir District Court decisions. And there, the District Court in the Central District of California made the determination that a jurisdiction could sort of be had as to either 1391 F3, which again relates to agencies or instrumentalities, or under F4, which relates to where the sovereign is the defendant, and sort of suggests that they can be blurred or blended in some fashion. And my response to that is that that is quite bold, this case law, and predates the case that we have that recognizes the juridical distinctions between agencies or instrumentalities or sovereigns. But more to the point, in both of those cases, the District Courts recognized or determined that they could take jurisdiction over both the agency and the sovereign. And therefore, it didn't matter in that court's mind which subsection of the venue provision applied. But here, the sovereign is out. The political subdivisions are out. Thank you, Counsel. Your time is up. Mr. Woofter. Thank you, Your Honor. I'll start with the waiver issue because I want to point out that we didn't incorrectly state what the District Court got wrong. We said, and I'll quote again, because the District Court's finding of improper venue was based solely on its personal jurisdiction holding, its dismissal based on venue does not pass muster. The personal jurisdiction holding of the District Court was that nobody had sufficient contacts with South Carolina. And thus, F3 of the venue statute did not apply. But as we've said in the opening brief and is undoubtedly correct, the question for personal jurisdiction purposes are contacts with the United States as a whole, not with South Carolina particularly. So that holding of the whether or not constitutional due process requires something different for doing business than the venue provision does as provided in the FSIA are completely different things. But more to the point, we actually don't care where this case can be heard in this country. If it's in the District of Columbia, or if it's in Seattle, Washington, because that's where Getty's Images is, if it's in New York, because that's where the Met is, or in Michigan, because of the law. Counsel, that's not how it works, right? You don't, I mean, you have that you have to show venue is proper. You can't and sometimes venue, I mean, might not be proper anywhere. I mean, I'm not saying I'm not prejudging. I'm just saying, I don't think you get to say, well, I'll take, send me wherever you want me to. I mean, I think the burden is the statute has requirements, and you have to meet them. I mean, I know you think you have. But my different point is on this issue. And I won't give you time to the rest of your time. But do you think the, I mean, I understand your argument about the sentence where you challenge venue is a sufficient challenge to the court's dismissal. But it seems to me there's another issue, even which is the court could be right that you didn't have venue, but arguably should have transferred the case in the interest of justice. And you don't raise that issue, do you? No, that is absolutely something that we raise. And that is the point of the footnote. Where did you raise that? So we didn't raise it below your honor, because as we noted, the district court never had occasion to consider whether to transfer because as my counsel on the other side just acknowledged, it would have been futile to do so. The district had already found that we lacked standing. And to go to standing for just a moment, house doesn't apply. We didn't bring this case in a dead person's name. We brought it in Berg's name. Berg always had an injury, in fact, from the outset of this case as the heir. Whether or not we pleaded that sufficiently doesn't matter now, because the fact that we were injured had existed from the outset. And we could now factually establish that. And in fact, this court did so in Jeffy Spindler Covey, Genesco, 747 at second 253, on appeal at oral argument, allowed a defect in the jurisdictional pleading to be amended, pursuant to 28 U.S.C. 1653. As for redressability, there is simply no legitimate basis to affirm the district court's musings that even just the public museums could not fully redress any of my client's claims, at least as to the artworks they possess, control, and display. The district court based that on a holding that they might ignore a judgment, but that's not the correct inquiry. Judgments are had all the time against defendants who ignore or otherwise can't satisfy them. That has nothing to do with redressability. And finally, I just want to point a couple of allegations that were my remaining time. Defendant Museum, Prisenhoff, loaned NK-2650 to the Grand Rapids Museum of Art. Dordricks sold a license for an image of 1695 to Getty Images. Dordricks and Locke and Hall also used two different pieces of art to promote and sell tickets into the United States. The Ministry and RCE loaned different pieces of art to the Cleveland Museum of Art for exhibition and to the Met for exhibition. In all of these cases, all such artworks were taken in violation of international law abroad, such that much of the relevant conduct occurred elsewhere decades ago. And it is difficult to conceive of a case where a plaintiff can reasonably expect to show more at this stage than we have, specifically that the defendants profited from activity they purposefully directed in the United States using the artworks that were expropriated by Nazis. Thank you, your honors. Thank you, counsel. We would obviously love to be able to come down and thank you in person and shake your hand, but the times prevent us from doing so. But please know we appreciate your advocacy and we'll take the case under advisement.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Michael F. Urbanski